Good morning. I'm in the East Court on the Miami-Dade Shores, representing the defendant, Mr. Mikal Wilde. I'd like to reserve three minutes, if I may. This morning, I'd like to address three issues that were raised in the brief, but I'd like to kind of go in the with the email issue. The witness, Thomas Dewey, has discussed to me about banishing your phantom email from Mikal Wilde. Second, I'd like to discuss the excited letterman's statement made to the jogger, Mr. Biblow, encountered on the road the morning after the shooting. And third, if we have time, I'd like to address the prior consistent statements which we intend to use to bolster the in-court testimony of Mr. Biblow and the witness, Mr. Walter Potts. The Dewey email was a critical piece of evidence with regard to the element of premeditation and the sex that would come against Mr. Wilde. What really was that critical? Excuse me? What wasn't that critical? Which the two defendants said when they made their arguments in the district courts. We're looking at it now. I understand. And so I'm just curious, because there's some interesting arguments presented here with respect to the email, but ultimately, you'd have to show prejudice. And it seems like the case here against your client, especially in light of the surviving folks, the eyewitness testimony, that seems like a pretty high bar for you to meet. So I wonder if we could work backwards. Sure. There was plenty of evidence of the shooting. There was plenty of evidence regarding the marijuana quote. But the question of whether the shooting was actually premeditated, that is whether he fought in advance, was not as clear. MS self-defense was put up by the defendant to testify. The government, in its closing argument, suggested 12 factors that it claimed showed premeditation. But most of those were just recitations of the facts surrounding the groin. Well, let me tell you what I'm focused on, because I just, we have the eyewitness testimony from Bigelow and Lopez-Paz. Mr. Wilde admitted that he took guns and cell phones from all three men. Mr. Wilde admitted that he arrived armed and without cash to pay the men. Mars Winthrop was shot in the back in pursuit. Mr. Wilde did not call the police after the incident. Mr. Wilde disposed of the weapon and cell phone after the incident, and then he texted his girlfriend to say, stop the logs the day of the incident. It just seems that that is, even if you take out the email, considerable and if not overwhelming evidence of premeditation, as well as evidence of other elements surrounding first degree murder. Well, I don't believe that it's overwhelming, because what you have is you have this scenario that's starting a couple of days before the actual shooting where things are starting to disintegrate, and the two workers are concerned about whether they're going to get paid. They're mad about not having a workout. So they want to leave. Wilde is getting, Wilde testifies that he feels that he's seeing a side of these guys that he's never seen before, and he's concerned about what's going on. So he's concerned about the fact that they've got guns, that they've got these sort of wild backgrounds, and he decides to take the guns away. That's certainly consistent with trying to protect himself in terms of what's happening in this case. In other words, what is his self-defense story exactly? How did these people without guns endanger him? Or did one of them not have a gun? Well, he thought that he had a gun. He thought he had a different gun. That's right. Or he had a gun. He testified at one point that his gun had been stolen from his house, and he was going into a, you know, what's called, you know, sort of currently somewhat delusional state. But, you know, that... Can I add something to the arts of the arts of this question? Sure. This is what I don't understand. Rule 1008 seems to have a specific exception for this or be any issue about whether an asserted writing, recording, or photograph ever existed. Another one, produced at the trial, or hearing as the original, or other evidence, content accurately reflects content. So this rule seems to be saying that this sort of thing that you're concerned about doesn't go to the jury. Correct. Right? So the gatekeeping operation appears to be just an ordinary gatekeeping operation. I mean, could any rational juror find this? I mean, you at points seem to be arguing for something stricter than in your applied review we're arguing that we have been contradictory. There's thought, there does seem to be a statement in a recent Second Circuit case, but it just seems flat wrong given this rule. Well... That's what the rule seems to say, that the jury, it is for the jury. Well, let me answer it in two ways. One, in the Huddleston case, which is the principal case, you could have a rational jury accept the nameless evidence. The Huddleston case says, could a rational jury find by preponderance of the evidence? Now, Huddleston doesn't say the court has to find preponderance of the evidence. The court says, Huddleston says the court has to ask whether a rational jury could find by preponderance of the evidence, and the district court never made that determination. The district court basically said, I don't know. It's not a credible scenario. And then he said it could go either way. The district judge never said. I don't think it's an incident theory. I don't assume it was building in the right standards. And you also argue for an instruction, but it strikes me that it means this is what juries do. If they don't believe that there is story, so if they don't believe that there ever was a writing, then they're not going to rely on it. So it takes care of itself. Huddleston rule 1008 says it's for the jury to determine. And I would focus on the word determine. The jury here never made a determination. It didn't do anything. It either believes a story or it didn't believe the story. And with regard to the harmlessness, it seems to me that the likelihood that it did was such weak evidence that that's another reason that it was likely harmless. But even assuming that, they still had to consider whether, in fact, it existed or didn't exist. It was argued to them that it didn't exist, so it seems to me they had to decide whether it did or didn't exist. Are we looking at the instruction under plain error review? Excuse me? Are we not looking at the instruction? Yes. So you're saying it was plain error? Yeah, I'm saying it was plain error because 1008 says a determination has to be made. The jury had no way of telling what to do with this evidence. I mean, the evidence comes in. It's very weak. It's all over the board. The evidence is that two agents of ID, you know, and no, he didn't destroy it. The file destroyed it. Somebody else may have destroyed it. The bookkeeper may have destroyed it. Nobody knows what the story is, but there's no determination. The evidence comes in as any other evidence comes in, i.e., somebody is saying and the other side is arguing that this is not believable and then you either believe it or you don't believe it and so I don't understand what would be added by an instruction that says you can either believe it or not believe it. Well, it's like any other piece of conditional evidence where the court instructs the jury what do you do with, how do you process this particular evidence? Do you just get an instruction that says here are the elements of the crime, where the elements of the crime may have been in a reasonable doubt, or does the judge tell the jury, with respect to this evidence, it is your job to determine by preponderance of the evidence whether it exists and if so, then you can consider it. My argument is that it's not like any other evidence that comes into court because I suppose you want to move on to the incited utterance, but I suppose one difference is that this may suggest that the jury has to be unanimous as to the preponderance. In other words, it can't be that each individual juror goes and does what he wants with this evidence, and that's the difference. There would have to be a determination by the jury as a separate unanimous decision as to whether there's no preponderance I think the instruction says in order for you to consider this evidence, you, the juror, have to decide that there exists five components of the evidence, and then you decide whether there is a reasonable doubt as to the elements of the crime that may have been found in your evidence. So you're claiming basically that this fades, that the preponderance of the evidence is the standard that they have to consider in respect of whether they should consider that particular evidence, as if any of the instructions are what you're talking about. The instructions are somewhat wrong. You know, I've taken you back to the fact that we have voluntary disuse all the time, so the jury is always going to be there for you if you can function your hearings, and that the jury is going to consider that as well. It's part of the jury's deliberations. How is that different from that of the jurors? Well, the difference is you've got a federal rule of evidence, 1008, which puts an extra layer on this, you know, general admissibility question, and that's why to answer, to go back to Judge Marzano and to answer your question, Judge Blount, is that it's not just a question of admissibility. It's because you look at admissibility first under federal rules, the 400 series, and then it's the evidence cases. You look to, is there another rule that controls admissibility, and here there is. It's called the best evidence rule, and it's in rules 1004 and 1008, and it runs out of time. So I would like to hear a little bit about the excitement Okay. With respect to the excited literate, it's not just a statement that he did or here's how it happened. It's a statement that occurs approximately 12 hours after the fact. Clearly, Mr. Bigelow is excited. He's, in fact, terrified. With regards to the shooting that he's witnessed, but he's had a lot of time to think about it. In fact, he's had an entire evening to think about it, and what he ends up telling Mr. Graham on the jog around the road takes up about an age and a half of a transcript, and it's a narrative. It's a narrative of what happened. The question is, can you cross-examine a narrative? You can't cross-examine a narrative and say this is, and so there's two bases for excluding this statement, and the reason this statement is important to go directly to the prejudice question is because Bigelow wasn't the greatest witness. He was a witness. He was the first witness, and he really had to be bolstered, so they used Graham as the second witness at the jogger to, by means of this narrative, have him repeat the story through Graham. You know, the defense counsel could cross-examine Graham as to the accuracy of what he heard. The question I have is that I understand that time is really a problem. One shift seems to be probably longer than any instance. Is there any other case that in case one shift excited utterance was admitted this long after the fact? I guess there are times when he was still excited. He was still excited. But the other question is, the narrative that you're emphasizing, I mean, usually inside the utterance is, in other words, it's not a story. Is there any law in that at all? I mean, any comparators or anything that's like this? I couldn't find anything. The closest thing I could find, and I'm quite aware of that, there are a couple of cases that deal with children where, you know, the time gap is a little bit longer. But ordinarily, I mean, this court has cases where they've found it pleasant and excited utterance when an hour went by and that person told the story to someone else in the interim here. In other words, it's not to use for something like, oh, he killed me, or he killed him, or something. It's not quite a long story. That's right. I mean, here he's retelling the whole thing in capsule form, to be sure. And he's excited, but, I mean, I know a lot of people that are really excited. They're really excited. And then, oh, running off like a wild pig up a tree when he sees a car. I mean, this is pretty distinct, I mean, in a unique set of circumstances because of the ongoing nature, was it not, I mean, of his fear. I'm not doubting his fear. I'm overnight doubting his fear. But I think the fact is that there was such a long interval. The question is whether it was. Was there really a long interval when that was ongoing? I mean, up to the moment that he saw the jogger, including while he's talking to the jogger, it seems like he's still very afraid and recounting everything that has happened. It's literally spilling out. And so I just think, you know, it seems a bit of a challenge for you, even though normally I understand what your argument is, but this situation, I think, is pretty distinct. If we accept that any time a person is suffering from PTSD, then, you know. I don't think so, because it seems like he was still trying to run away, or the NPO, away from the defendant and the palantir. Well, and it's going to come in in all sorts of cases. It's going to come in in kidnapping cases. It's going to come in in accident cases. Any case where there's a big gap in time and somebody is very excitable for good reasons, it's going to eat up the exception. Let me ask you this. There are a lot of facts in the time on the temporal aspects, climbing up a tree, not climbing up a tree, staying in the woods all night, and that the district court had all of these facts to consider and made a determination once it was stated over to the U.S. that it would go to court. Well, with regard to the interpretation of the hearsay exception, it's a question of law, but the district court made the correct determination that it's an abuse of discretion. Well, I think it's an abuse of discretion standard here under the circumstances. Excuse me, is it not? Under the circumstances, so this case, no, because this exception to the hearsay rule is being stretched way out there. Well, you're saying then that it's so stretched that it would be an abuse of discretion, so I don't believe the case determination is there. Okay, your time is up. We'll give you a minute or two. Thank you. May it please the Court. Meredith Osborne, United States. Drimwell, 16 days while admitted that he shot and killed Roberto Juarez Madrid, an undocumented worker that he'd hired to tend his marijuana grow, after Juarez Madrid asked to be paid. I'll start with the excited utterance. Sure. I won't miss all of the excited utterance. Judge McGee, this is a unique situation because, as you pointed out, it's not merely that he was still excited, which Mr. Schwartz concedes, but it was that the event was still ongoing. This is analogous to the event that he talked about. Well, yes, Your Honor, because he did, he was talking about the fact that he was being hunted down by wildfires at the home, and that, of course, I would think an excited utterance, which he couldn't be introduced, but here, what's trying to be as unique about the situation is that he is telling an extensive story about something that happened 12 hours before that led to his current situation, but it's not his current situation. And I don't know of any analog to that. I mean, ordinarily, my recollection, and I haven't gone back on it yet, is that the excited utterance exception is basically in common law an extension of the present sense impression, and that has always been understood to be pretty limited to something that is, the whole notion being that you didn't have time to think about it, and it's so spontaneous that it must be accurate. And in here, whatever else is the case, he had 12 hours to think about it, and what he's recounting is not his current circumstances. No. In fact, he is saying that his first statement to Graham is, they're trying to kill me. That is the present sense. Okay. I think that maybe there's some part of this that is an excited utterance, but the whole tale about Howard came to be working there and guns and so on was not an excited utterance. Let me make an analogy to a kidnapping victim. Let's say that J.C. Dugard, for instance, is the first person that she sees when she manages to escape from her captivity, and she says, I was kidnapped 10 years ago, and I've been held in captivity ever since. This is exactly the same sort of situation. This is the very first person that Bigelow is encountering during a 12-hour ordeal. In fact, his ordeal didn't end until after he spoke to Graham, and Graham returned with the agents and then had told Bigelow, these are law enforcement. You're safe. You can come out of the woods now. That's when the startling event ends. Up until then, the startling event, just like the period of captivity, I agree that there is not a case directly on point in the circuit about this, but that is because this is a unique situation. But it's not a slippery slope such that in any case, 12 hours later after somebody was held up, for instance. Yes, Your Honor, exactly. And in fact, if this court were to hold the opposite, that this was not an excited utterance, then someone like the kidnapping victim would not be able, would never be able to say I was kidnapped 16 years earlier when I'm just starting to get a hang of how to testify. But that's not what this is about. This is about whether this statement, how the court's statement shows someone else can come in. I would also say that this testimony was not a long story. It covered about two pages of testimony. It was several lines over the course of a 16-day trial. So again, I think this was already pointed out by Judge Block, but the standard is an abuse of discretion. And in addition, Bigelow testified to all of this himself. So there's no larger concern about him not being cross-examined about it. And so, and then, as you pointed out, Judge Berzon, some of it would probably come in under the presence of suppression. Some of that even narrows down the amount of testimony that we're talking about further to simply several lines. And so this was not a 20-minute long conversation that he was recounting here. This was a quick, help, get me help. I'm being hunted down. I've been hunted down all night. And I'm not coming out until I see you with a police officer coming to get me assistance. He says that in ER 14. So this is a very short statement that he's making. Can you talk a little bit about the prior constitutional statements? This is what I kind of understood. The fact that he was, I understand your basic argument to be that by pointing out that he had, that these people had immunity and they were challenging their credibility. And the question is whether that was a recent, when he was accused of a recent fabrication. Is that basically right? Yes. I mean, I think there's two reasons that this came in. The first being that they were both cross-examined about Bigelow, about the immunity that he was given to testify in the state court preliminary hearing. And Lopez-Paz about the youth visa application that the government made on his behalf. And then also because Bigelow was cross-examined extensively using his prior consistent statements, the statement that he made, the statements that he made both on the day after the shooting. Yes, it seems fairly straightforward. But as to the other amendment, is there any immunity because, I have a hard time picking up the immunity with an accusation of fabrication. In other words, once they're getting the immunity in order so that they will testify, and rather not testify, but, and there's some implication that they might have, in order to get the immunity, they have the courage to favor with the government by telling a story that the government liked. But it's not the immunity itself that's creating the problem. It's whatever they said to get the immunity. Well, this is the paradigmatic case of, you know, I mean, the granting of immunity is, in most every case in which I've seen that it's come up, it's being used to raise the implication that the witness is testifying on the government's behalf. And that's what this court has said. But the immunity itself is not the time when any fabrication would have occurred, is the only point I'm trying to make. You're trying to figure out when, at what point, in the notion, in other words, in this instance, the claim is that, well, they had reasons to lie from the beginning. And the same reason they had to lie from the beginning is the same reason that they would have tried to get the immunity. But it's not the immunity that's the lie. I think I understand your question to be about the claim that because they had the immunity, yes, Your Honor, but if we were to go back and say that they had an incentive to lie from the moment that they encountered law enforcement immediately after the shooting, because that's when the statements right after the shooting were given, I think that that would be contrary to this court's cases that have been cited in Bow and Colico, which says that there has to be some law enforcement action, not just a mere hypothetical concern about. Is it your position that whenever somebody creates immunity, that opens the door to a high price? Do you think it's to replace the evidence? Only if they're cross-examined about that in trial. Well, I guess there are always questions about the fact that you were great at getting anybody. And I assume that the only questioning is as a result of that, you know, why you don't think everything about the truth. Is that the only type of questioning that happens? Just in every case where there's a grant of immunity, is your position is that once there's any questioning of that nature in a matter of law, it opens the door to prior consensus statements or even transitional evidence? I just want to get clarification as to what your position is. Yes, Your Honor, and I believe that that's what this court said in U.S. v. Allen. You see, Allen is the precedent that says that just questioning somebody about the grant of immunity, you want a slight look into whether there's consensus statements to replace evidence. Do you see how this stands for that proposition? Yes. I mean, in Allen, this court said this is the classic situation in which evidence of a prior consistent statement is allowed into evidence. Just the fact that there's any questioning of a law posting witness that you're testifying under a grant of immunity is sufficient to allow that? What do you mean by that? Yes, and, Your Honor, yes, and here there was more. But yes, that is an implication that the rule itself says that any express or implied motive to fabricate, and so the grant of immunity is an implication by the defense that the witness has been granted something by the government. But nothing to do with just the fact that it was brought out at the trial that he's testifying under a grant of immunity. Your position would be that that would allow him to write his statement into the evidence. I just want to get clarification as to what your position is. Yes, Your Honor, but this court does not need to make such a broad finding here because there was extensive cross-examination. Yes, you say yes to the answer. It's your answer. But in any event, you say there's more here than just questioning about the fact that you're testifying under a grant of immunity. What else was there? Well, with Lopez Paz, Wilde impeached, and that's the statement that came in at the state preliminary hearing. Wilde impeached Lopez Paz with the government's application for a U visa. Lopez Paz, the other guy. Oh, well, in Bigelow's case, he was extensively impeached with the statements themselves based on consistency. So, you know, this court doesn't even need to decide whether or not those statements properly came in. His questions extensively about the grant of immunity is what you're saying, Your Honor? No, Your Honor, what I was saying, that he was cross-examined with the statements themselves. They were actually introduced by the defendant on pieces of it, but then they were heavily redacted by the district court, so the district court didn't just blanket introduce all the statements. And if you, if this court goes back and looks at those statements, those are 845 and 847, they are heavily redacted by the district court to focus on the testimony that he was impeached with. In any event, I'd like to see the relevance of what you're saying. Yes, Your Honor. You're saying that you have the actual statements that the defense attorneys were introducing. On top, or in addition, they had, there was a reference to the immunity grant. Both, yes, Your Honor. So, these came in under both of the exceptions here. And then we put Lopez-Paz. Was there a camera around his immunity and a U-Visa, or just the U-Visa that they were telling you? It was just the U-Visa and the, and the page that he was reported on as well. I see I'm almost out of time. I just. I have a question for you, if I may. Yes, please. Do you think that the judge should, as a matter of law, serve the jury that we have to make that finding in terms of the miscommunication by a preponderance of the evidence, and it's not done here? Do you think that the judge should have done that when it was required? No, Your Honor. But I would also point out, and thank you, because I wanted to make sure to point out that this court, that the district court did get jury instruction number 11, which is about statements of the defendant. And jury, in that, jury. But the judge didn't have anything to say. If you don't want to say you have the statements, you don't want to say you have the evidence, and you don't have anything to charge about the jury, do you? No, but the district court said, you have heard the testimony that the defendant made in the statement. It is for you to decide, A, one, whether or not the defendant made the statement, and two, if so, how much weight to give it. And so, although that doesn't say the magic words, preponderance of the evidence, the district court did instruct the jury on how to consider statements made by the defendant. And there were numerous. This was not the only admission that was testified to during the trial. I don't know of any difference, although the district court's just not arguing, that one point actually says, but in a jury trial, the jury determines any issue about, does that mean that the jury as a whole has to separately decide that by preponderance of the evidence rather than having each juror taken into account while they're voting? Because presumably, at that point, you could have different jurors coming to different conclusions. Some of whom rely on this than others. Some of whom don't rely on this, but rely on something else. I was thinking about that when you asked Mr. Schwartz about that, and it occurred to me that that, that this court has never, certainly it can't be plain error because this court has just, yes, that the jury has to. A jury has to determine something. They usually meet as jurors. But then a special verdict form would be required every time that the best evidence rule was applied. I don't think that there's any precedent for that in this court. Personally, if I were signing a threat out of this, that's what I would say because that's what it says. The jury determines. But that's, no, Your Honor, I wouldn't say that that's what that means. But the jury determines this just like any other fact, and there are lots of facts in a jury trial that the jury need not decide. You know, for instance, predicates to certain offenses. The jury may not agree about what gun was possessed by a convicted felon, and yet they can agree to convict somebody of being a felon in possession of a firearm. So requiring jury unanimity as to this particular pathic would be inconsistent with this court's other cases. So there would sort of be no purpose for the sentence because the, I mean, as I was initially saying, I mean, usually if evidence comes in, the jurors say, you know, I believe that guy, I don't believe that guy, I don't think this ever happened, you know, and then they come to a joint conclusion that seems to be saying there's something special about this. I disagree. I don't read the rule the same way. Just the same application that this court has said in Huddleston and Evans and that the district court applied that a reasonable jury could decide that the email containing the statement existed. And I just wanted to not to do that. That's true. But anyway. I say a reasonable jury could decide it, but the question is did the jury decide it or did just some people decide it and other people not decide it? That's the difference. Anyway, go ahead. I say a reasonable jury. I think I understand what you're saying, but I disagree that there's been any requirement ever that such a special verdict be required for a predicate fact, whether under Rule 104B or under Rule 100A. And I would just point the court to the district court's finding in ER 3 and 661 where it applies the correct standard under Huddleston, contrary to what Mr. Schwartz said in his argument. If there are no further questions, I would ask the court to affirm. I think that one question might have taken so long to bring this case forward. I admit that I'm not sure that I know exactly why, but this was a case that was adopted from the local authorities, and this was a murder case, so it's necessarily he was arrested in 2010, not died until March of 2012, and then ultimately convicted and sentenced in spring of 2015. Yes, Your Honor, that's correct. Okay, thank you very much. Mr. Schwartz, would you like to be recommended? Thank you. Thank you. I want to go to the questions from the exciting iterants from Mr. McCullough and the prior consistent statement of Mr. Booth. Both of these, the injury issues, go to the same witness, and this witness was the only eyewitness, in addition to Lopez-Paz, who was the one who was shot. Again, this is critical testimony. This was the first witness for the woman and the shaking, and he was the last witness for the government. Anyway, the reason I say he was the last witness, the last words that the government heard before the jury heard, before it started to deliberate, were on the consistent U.S. attorney reading the prior statement that Mr. McCullough had given at the time, and I went to the prior statement. So the fact that this evidence came in as well from the excited iterants and as a prior consistent statement really bolstered this key witness and really bolstered the prosecution's testimony against Mr. Booth, and that goes to all of the accounts, with the exception of the one and two, which are the very minor distribution and conspiracy accounts. I wish I could debate all day about the e-mails and the evidence to it. I'm proud to tell you that. Thank you very much. Thank you, Mr. Judge. Thank you both for your arguments. And that's the first trial just completed.
judges: Berzon, Murguia, Block